# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHELLE LENOIR GAULDING, | ) | |
| representative of the estate of | ) | |
| GARLAND G. LENOIR, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-01072-PRW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is the United States' Motion to Dismiss (Dkt. 24), seeking dismissal of Plaintiff's wrongful death claim and request for attorneys' fees. For the reasons stated below, the Court **GRANTS** the motion.

### *Background*

Garland Lenoir was a patient at the United States Department of Veterans Affairs Medical Center in Oklahoma City (the "VA"). Between 2018 and 2019, the VA examined Mr. Lenoir and failed to detect that he suffered from lung cancer.[1] The VA ultimately did not diagnose that Mr. Lenoir suffered from lung cancer until April of 2019, at which point it had progressed to stage IV cancer. One year later, Mr. Lenoir filed an administrative complaint against the VA alleging that VA employees breached their duty of care to him

---

[1] The Court notes that at this time, the United States has not filed an answer to any of the three complaints. The Court thus summarizes the facts as presented by the Plaintiff.

by negligently failing to diagnose and treat his lung cancer in a timely manner. After six months elapsed without an answer from the VA, Mr. Lenoir sued the VA pursuant to Title 28 U.S.C. § 2671 of the Federal Tort Claims Act (the "FTCA"). While the case was pending, Mr. Lenoir died. The Court entered an administrative closing order but later reopened the case after Mr. Lenoir's daughter—Michelle Lenoir Gaulding—substituted herself to continue the case on behalf of Mr. Lenoir's estate. Ms. Gaulding filed an Amended Complaint (Dkt. 17), including allegations and an additional claim that the VA's negligence caused Mr. Lenoir's wrongful death. [2] The United States filed a Motion to Dismiss (Dkt. 18) under Rule 12(b)(1) and Rule 12(b)(6), prompting Ms. Gaulding to file a Second Amended Complaint (Dkt. 22) to address the deficient pleadings. Now, the United States has filed a second Motion to Dismiss (Dkt. 24), again under Rule 12(b)(1) and Rule 12(b)(6), arguing primarily that the Court lacks subject-matter jurisdiction over the added wrongful-death claim as Ms. Gaulding has not exhausted her administrative remedies regarding this claim. [3]

---

[2] In briefing, the United States characterized the relevant material as an added wrongful death claim, while Ms. Gaulding characterized the relevant material as simply a continuation of the existing medical negligence personal injury claim. Ms. Gaulding later observed that Oklahoma law allows for both survivorship claims and wrongful death claims but did not specify which claim or whether both claims were intended by the added facts of Mr. Lenoir's death. The Court's ruling in this Order necessitates the conclusion that any separate claim arising from Mr. Lenoir's death has not been exhausted. However, for the sake of clarity, the Court adopts the language "wrongful death claim" as shorthand for any potential future claim arising out of the fact of Mr. Lenoir's death.

[3] In her prayer for relief, Ms. Gaulding also sought that "all costs of this action be cast against" the United States. To the extent that the costs of the action might include attorneys' fees, the United States moved to dismiss the potential attorneys' fees claim. However, Ms. Gaulding responded that her Second Amended Complaint did not make a claim for

*Legal Standard*

At its core, the United States' argument contends that the Court lacks subject-matter jurisdiction since the FTCA does not waive the United States' sovereign immunity for non-administratively-exhausted claims. Sovereign immunity "shields the United States, its agencies, and officers acting in their official capacity from suit," and is "jurisdictional in nature."[4] As such, a motion to dismiss based on sovereign immunity may be presented pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[5] Rule 12(b)(1) motions generally take one of two forms, either "a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction," or "a challenge to the actual facts upon which subject matter jurisdiction is based."[6] The legal test applied depends on which type of challenge the movant asserts. When the 12(b)(1) challenge is a facial attack, the Court confines itself to review of the complaint and accepts all allegations as true—much like 12(b)(6) review.[7] When the (12)(b)(1) challenge is a factual attack, the Court must "resolve

---

attorneys' fees. The United States replied that with this concession, it "does not contest Plaintiff's requested relief." The Court therefore finds that the attorneys' fees portion of the original motion to dismiss has been withdrawn.

[4] *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) (first citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983), then citing *FDIC v. Meyer*, 510 U.S. 273, 280 (1983)).

[5] FED. R. CIV. P. 12(b)(1) ("[A] party may assert the following defense[] by motion: (1) lack of subject-matter jurisdiction.").

[6] *Ruiz v. McDonell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

[7] *See United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001); *Holt*, 46 F.3d at 1002.

[the] disputed facts" and has "wide discretion to allow affidavits, other documents, [or] a limited evidentiary hearing" to do so.[8]

Turning to sovereign immunity, "[t]he United States and its officers enjoy immunity from suit except in instances where the United States has expressly waived that protection."[9] Not only must this waiver of sovereign immunity be "unequivocally expressed,"[10] but any Congressional enactment purportedly waiving sovereign immunity must be "strictly construed 'in favor of the sovereign.'"[11] This suit arises under the FTCA, where Congress created a "limited waiver of sovereign immunity" by "making the Federal Government liable to the same extent as a private party for certain torts of federal employees."[12] However, the FTCA's waiver of sovereign immunity is not without exceptions—"an action shall not be instituted . . . against the United States for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . . unless the claimant shall have first presented the claim to the appropriate

---

[8] *Holt*, 46 F.3d at 1003; *see also Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292–93 (10th Cir. 2005).

[9] *Flute v. United States*, 808 F.3d 1234, 1239 (10th Cir. 2015); *see also United States v. Testan*, 424 U.S. 392, 399 ("It long has been established . . . that the United States, as sovereign, is immune from suit save as it consents to be sued . . . .").

[10] *Flute*, 808 F.3d at 1239 (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).

[11] *Id.*; *see also United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996) ("If waiver is not unequivocal from the [statutory] text, the government retains its sovereign immunity.")

[12] *Ohlsen v. United States*, 998 F.3d 1143, 1153 (10th Cir. 2021) (citing *United States v. Orleans*, 425 U.S. 807, 813 (1976)).

Federal agency."[13] This administrative exhaustion requirement "mandates that a claimant must first present the claim to the appropriate Federal agency" before filing suit.[14] Thus, failure to properly exhaust administrative remedies deprives this Court of subject-matter jurisdiction to entertain claims brought under the FTCA.

## *Discussion*

Here, the United States brought both a 12(b)(1) facial challenge and a 12(b)(1) factual challenge, but Ms. Gaulding does not dispute the material facts, so the Court need only consider the 12(b)(1) facial challenge. The parties agree that Mr. Lenoir properly filed his negligent medical care claim with the VA, waited six months, then filed suit under the FTCA.[15] The parties also agree that Ms. Gaulding added a wrongful death claim—which was fundamentally based on the same operative facts as the existing negligent medical care claim—without submitting the new claim to the VA or waiting for administrative remedies to exhaust. Therefore, the issue before the Court is purely a matter of law: does the administrative exhaustion requirement of the FTCA require the estate of a plaintiff to refile and exhaust administrative remedies for a wrongful death claim that is based on the same operative facts as an existing and properly-exhausted medical negligence claim?

The United States argues that since the new wrongful death claim was not submitted to the VA, it has not been exhausted and must be dismissed for lack of jurisdiction. It relies

---

[13] 28 U.S.C. § 2675(a).

[14] *Ohlsen*, 998 F.3d at 1154 (cleaned up).

[15] Administrative remedies are exhausted either when the agency denies the claim or fails to make a final disposition of the claim within six months of the claim being filed. *See* 28 U.S.C. § 2675(a).

heavily on *Warrum v. United States*,[16] where the Seventh Circuit confronted a similar situation and concluded that the filing an exhaustion of a pre-death medical negligence claim did not satisfy the exhaustion requirement for a subsequent wrongful death action. Ms. Gaulding answers that the FTCA requires exhaustion of administrative remedies only once and all facts relevant to the wrongful death claim were already exhausted via the medical negligence claim. She cites *Brown v. United States*,[17] where the Eleventh Circuit concluded an estate representative did not need to exhaust a subsequent wrongful death claim where the decedent had previously exhausted a personal injury claim. Neither party identified precedent from this Court or the Tenth Circuit that completely controls the issue.

Upon review of the parties' arguments and the relevant precedent, the Court concludes that the text of the FTCA, the purpose of the exhaustion requirement, and the separate and independent nature of personal injury actions and wrongful death actions all lead to the singular conclusion that administrative exhaustion of a personal injury claim cannot serve as exhaustion for a subsequent wrongful death claim, even when the wrongful death claim is based on the same operative facts.

Where "Congress specifically mandates, exhaustion is required" and "may not be dispensed with merely by a judicial conclusion of futility."[18] Unlike the discretion that accompanies some judicially-created exhaustion doctrines, federal courts are not at liberty to add or subtract from clear exhaustion requirements codified into federal statutes. Here

---

[16] 427 F.3d 1048 (7th Cir. 2005).

[17] 838 F.2d 1157 (11th Cir. 1988).

[18] *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

the statute states "an action shall not be instituted upon a claim against the United States for money damages for . . . personal injury or death . . . unless the claimant shall have first presented the claim to the appropriate Federal agency."[19] A straightforward reading indicates that this statute requires presentation of the specific *claim* to the agency, not merely Mr. Lenoir's presentation of a claim containing operative facts that might also support a variety of different future claims by Ms. Gaulding. The FTCA's grant of federal jurisdiction over specific claims does not confer jurisdiction over related claims, even if the other claims "derive from a common nucleus of operate fact" and consideration of the related claims would promote "judicial economy and efficiency."[20]

This specific-claim-centric approach fits with the purpose of the FTCA's exhaustion requirement, which the Supreme Court has noted was intended "to facilitate the administrative evaluation of tort claims by the agency whose activity gave rise to the claim and permit settlement of meritorious claims more quickly and without litigation."[21] The

---

[19] 28 U.S.C. § 2675(a); *see also Warrum*, 427 F.3d at 1049–50.

[20] *Finley v. United States*, 490 U.S. 545, 550–52 (1989), *superseded by statute*, JUDICIAL IMPROVEMENTS ACT OF 1990, PL 101–650, December 1, 1990, 104 Stat 5089. In *Finley*, the Court rejected the exercise of jurisdiction over common claims against pendant parties, which was later superseded by statute. However, the general inflexibility of the FTCA's jurisdictional provision remains a foundational principle.

[21] *Warrum*, 427 F.3d at 1050 (summarizing the Supreme Court's discussion of the purpose of the FTCA exhaustion requirement); *see also McNeil v. United States*, 508 U.S. 106, 112, 112 n.7 (1993) (noting "[t]he most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process" and that the FTCA exhaustion requirement was codified to "make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage," which "would have the best information concerning the activity which gave rise to the claim" and allow "claims which are found to be meritorious

Tenth Circuit further clarified the purpose of the statutory exhaustion requirement in *Haceesa v. United States*[22] when it observed that "[t]he only way that the Estate's claims could be considered valid would be if the administrative claims filed . . . were sufficient to place the Government on notice that they were seeking to assert a wrongful death claim on behalf of the Estate."[23] Thus, proper exhaustion occurs when the agency is on notice that a party seeks to assert a specific claim against the United States.[24]

Considering this purpose of placing the relevant agency on notice, the exhaustion of one specific claim cannot operate as a stand-in for exhaustion of another separate and independent claim. Yet while Mr. Lenoir properly exhausted his medical negligence personal injury claim, the substantive nature of a medical negligence claim and a wrongful death claim differ greatly. Under Oklahoma law, personal injury actions and wrongful death actions are separate and quite distinct.[25] A wrongful death claim "necessarily

---

can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation").

[22] 309 F.3d 722 (10th Cir. 2002).

[23] *Id.* at 734.

[24] *See generally Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) (per curium) ("A claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims.").

[25] *See Deep Rock Oil Corp. v. Sheridan*, 173 F.2d 186, 190 (10th Cir. 1949) ("Two separate and distinct causes of action arose if the injury to and the death of the deceased was caused by the negligence of Deep Rock. One was for injury to his person, such as pain and suffering. This action, under the Oklahoma law survives and may be brought notwithstanding the death of the injured person. The other, an independent cause of action, is for damages resulting from the death of the injured person. The damages in such a case inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin."); *see also Gaasch Estate of Gaasch v. St. Paul Fire & Marine Insurance Co.*, 412 P.3d 1151, 1155 n.11 (Okla. 2018) (citing and adopting *Deep Rock Oil*).

involves causation and damages questions distinct from those at issue in a [medical negligence] claim that does not involve death,"[26] and allows recovery of a wide variety of damages not available in personal injury cases.[27] And an essential element of a wrongful death claim is the death itself. Before receiving notice of Mr. Lenoir's death, the VA could neither contemplate nor reasonably calculate merits or settlement potential of such a future claim. Thus, since Oklahoma treats a wrongful death claim stemming from medical negligence as substantively independent and distinct from the underlying personal injury claim, Mr. Lenoir's exhaustion of the personal injury claim was not sufficient nor specific enough to also exhaust or put the VA on notice of the future potential wrongful death claim.[28]

Ms. Gaulding invokes the Eleventh Circuit's opinion in *Brown v. United States* to argue that here, like there, "[r]equiring [Ms. Gaulding] to exhaust the administrative claim procedure again would serve no useful purpose."[29] Yet this functionalist approach has since been firmly rejected by the Supreme Court. The "mandatory language" of statutory exhaustion provisions "means a court may not excuse a failure to exhaust, even to take

---

[26] *Warrum*, 427 F.3d at 1052.

[27] *McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467, 476 n.26 (Okla. 1987) (listing "medical and burial expenses, loss of consortium and grief of the surviving spouse, mental pain and anguish suffered by the decedent, pecuniary loss to the survivors, [and] grief and loss of companionship of the children and the decedent" as categories of recovery in a wrongful death action); *see also Carroll v. United States*, 227 F. Supp. 3d 1242, 1247 (W.D. Okla. 2017).

[28] *Accord Warrum*, 427 F.3d at 1051.

[29] *Brown*, 838 F.2d at 1161.

[equitable] circumstances into account."[30] Mandatory exhaustion provisions, such as section 2675(a) of the FTCA, "establish mandatory exhaustion regimes, foreclosing judicial discretion."[31] This Court is "not free to rewrite the statutory text" where Congress strictly "bar[red] [Ms. Gaulding] from bringing suit in federal court until [she] exhausted [her] administrative remedies."[32]

Ms. Gaulding's remaining efforts fair no better. Her argument that the causes of action survive the death of the original plaintiff is misplaced, as the question before the Court was not whether either cause of action survives Mr. Lenoir's death, but simply whether the wrongful death claim was properly exhausted before being brought to this Court. Likewise, her arguments analogizing Title VII cases are incomparable to the current situation, as those cases either did not involve an entirely unexhausted new claim or else implicated the private sector, not the United States and the required steps preceding waiver of sovereign immunity.

Considering the statutory text, the exhaustion requirement's purpose, and the separate and independent nature of the Oklahoma personal injury and wrongful death claims, the Court concludes that exhaustion of an underlying personal injury claim does not satisfy the exhaustion requirement for a subsequent wrongful death claim. Ms. Gaulding therefore has not exhausted the wrongful death claim in this case and this Court is without jurisdiction to entertain the claim at this time.

---

[30] *Ross v. Blake*, 578 U.S. 632, 639 (2016).

[31] *Id.*

[32] *McNeil*, 508 U.S. at 111, 113.

### *Conclusion*

Accordingly, the Court finds that it lacks subject-matter jurisdiction over the unexhausted wrongful death claim of the Second Amended Complaint, **GRANTS** the United States' Motion to Dismiss (Dkt. 24), and **DISMISSES** the wrongful death claim from the Second Amended Complaint (Dkt. 22). The case will proceed on the properly-exhausted personal injury medical negligence claim.

**IT IS SO ORDERED** this 22nd day of November 2021.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE